**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| VANCE STRADER, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 2:17-cv-684 |
| | ) |
| v. | ) Judge Mark R. Hornak |
| | ) |
| U.S. BANK NATIONAL ASSOCIATION et al, | ) |
| | ) |
| Defendants. | ) |

## OPINION

**Mark R. Hornak, United States District Judge.**

Pro se Plaintiff Vance Strader ("Plaintiff" or "Mr. Strader") initiated this action on May 26, 2017, against Defendants U.S. Bank National Association as Trustee for First Franklin ("US Bank"); Richard Davis; Michael Bengtson; Nationstar Mortgage LLC ("Nationstar"); Jay Bray; Salina Baca; Jessica Moore; Andrea Friedrich; William Viana; Sandelands Eyet LLP ("Sandelands LLP"); William Sandelands; Matthew Eyet; Alina Eyet; Mitchell Zipkin; and Cara Ann Murphy (collectively, "Defendants"). Defendants filed a Motion to Dismiss Complaint with Prejudice, ECF No. 18 ("Motion"), on August 25, 2017. For the reasons that follow, the Motion is granted in part and denied in part.

### I. Background

This is a an action for damages, asserting federal claims under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), and several state law claims.

#### A. Plaintiff's Pleadings

Plaintiff filed a "Verified Claim" on May 26, 2017, with his Motion for Leave to Proceed *in forma pauperis* ("IFP"). ECF No. 1-1 ("Complaint"), refiled at ECF No. 3. The Complaint

alleges FDCPA violations (Count 1), constitutional violations (Count 2), Unjust Enrichment (Count 3), Abuse of Process (Count 4), Invasion of Privacy (Count 5), and Libel and Slander (Count 6). This Court granted the Motion for Leave to Proceed IFP but dismissed without prejudice all claims arising under the Constitution of the United States and all claims within the Complaint brought on behalf of any individual plaintiff other than Plaintiff Vance Strader. May 31, 2017 Order, ECF No. 2, re-filed June 26, 2017, at ECF No. 7. Plaintiff filed a Motion for Reconsideration, ECF No. 6, which the Court denied. ECF No. 8. On August 11, 2017, Plaintiff filed an amendment to his Complaint, ECF No. 16, removing named Defendant Jessica Moore and adding a "common law claim private right of action against all named defendants for trespassing on my property without rights pursuant to the seventh amendment of the U.S. Constitution." Notice to Amend, ECF No. 16, at 1. The Court interprets this to be a claim for trespass under state law and the reference to the Seventh Amendment to be a demand for a jury trial in accordance with Fed. R. Civ. P. 38. For clarity purposes, the trespass claim will be referred to as "Count 7."

The Complaint[1] is difficult to interpret, but this action appears to arise out of events surrounding the foreclosure of a house located in Penn Hills, Pennsylvania (the "House"). Plaintiff, and family members Sandra Strader and Sonya Strader, appear to have resided in the House when it was foreclosed upon. Compl. ¶ 7. The Complaint states that Defendant is an executor and administrator for Sandra Strader's estate. Compl. ¶ 6.

---

[1] The Notice to Amend only pleads Count 7 and does not re-hash the allegations of the Complaint. The Court therefore treats the Notice to Amend as a sort of addendum to the Complaint, which contains the bulk of the facts.

2

Plaintiff also attached sixty-eight (68) pages of exhibits to his Complaint. Without any

substantive description of the exhibits set out in the Complaint, the Court best describes them as

follows:

Exhibit 1: (a) A copy of the recording of Sandra Strader's mortgage to US
Bank, showing a recorded date of August 25, 2015, in Allegheny County.
Nationstar is also listed on the document, and it is stamped "Certified from the
Record Allegheny County Dept. of Real Estate;" (b) A copy of a corporate
assignment of a mortgage executed by Sandra Strader assigning the mortgage
from Mortgage Electronic Registration Systems, Inc., as Nominee for First
Franklin Financial Corp. to US Bank, dated August 10, 2015; (c) A letter to "Mr.
Lance" (presumably, Plaintiff) in response to a request for a copy of a State of
Texas Notary Public application/bond, a copy of William Viana's Application for
Appointment as Texas Notary Public, and a copy of Andrew Friedrich's
Application for Appointment as Texas Notary Public.

Exhibit 2: (a) Notice of Intention to Take Default Under Pa.R.C.P 237.1 to
"Unknown Heirs, Successors, Assigns and All Persons, Firms, or Associates
Claiming Right, Title or Interest From or Under Sandra Strader, Deceased" in the
Court of Common Pleas, Civil Division, Allegheny County, in Case No. MG-15-
001358. The date of notice is July 6, 2016; (b) A letter dated January 6, 2016,
from Nationstar to Sandra Strader addressing some sort of request for
information; (c) A notice that the recipient has been sued in court without any
indication of the case number or the recipient but with language that "this law
firm is deemed to be a debt collector attempting to collect a debt." No law firm is
listed; (d) A notice in the Spanish language with the same debt collector
disclosure as the previous notice (also in English) and also with a list of "persons
to whom Rule 237.1 Notice Sent To," which includes Plaintiff. This notice is
dated July 6, 2016 and signed by Katherine M. Wolf, Shapiro & DeNardo LLC;
(e) A notice dated October 23, 2014, appearing to be from Sandra Strader and
Vance Strader to Nationstar with regard to an "Alleged Loan No. 61062073." The
notice states that it is "a notice of dispute pursuant to fdcpa 15usc1692 it has
Come to our attention that Nationstar does not have a mortgage assignment but
has been taking our money every month witch is clearly unjust enrichment." (f) A
twenty-one (21) page document appearing to be another notice from Sandra
Strader and Plaintiff. There is a date of February 25, 2016 on the first page. It
appears to be a form of notice to US Bank of the Straders' belief that "debt
collectors can't foreclose" and giving notice of dispute of the debt; (g) Finally, a
copy of a U.S. Postal Service Certified Mail Receipt, dated February 25, 2015,
related to a mailing from Sandra Strader to US Bank.

3

Exhibit 3: A copy of the "case search action screen" in *U.S. Bank National Association v. Strader*, Case No. MG-15-001358. The document identifies the litigants, including Plaintiff (who is identified as a defendant in that case), and lists docket entries with filing dates ranging from September 29, 2015, to July 15, 2016.

Exhibit 4: (a) This two (2)-page document appears to be a service history for Case No. MG-15-001358 from the Allegheny County Sheriff's website. (b) A document with a letterhead stating "Legal Advertising Trib Total Media," titled "Proof of Publication of Notice in Tribune-Review." The entire document is difficult to read but appears to be a publication of notice regarding Sandra Strader's mortgage with US Bank. (c) An affidavit relating to the Proof of Publication of Notice in Exhibit 4(b).

Exhibit 5: A court document in Case No. MG-15-001358, titled, "Plaintiff's Responses to Defendants' Requests for Admission." It includes a certificate of service.

Exhibit 6: A letter from Sandelands Eyet LLP to Plaintiff dated September 20, 2016.

Exhibit 7: A document from Sandra Strader, Plaintiff, and Sonya Strader to Sandelands Eyet LLP and Mitchell Zipkin, dated September 12, 2016.

Exhibit 8: A letter from US Bank to Sandra Strader dated December 11, 2015, informing Sandra Strader that US Bank has no involvement with the foreclosure process and directing Sandra Strader to Nationstar, as the servicer for the property.

Exhibit 9: A completed Subpoena to Attend and Testify form from the Court of Common Pleas of Allegheny County for Andrew Friedrich and William Viana.

ECF Nos. 1 & 3.

After review of the Complaint, the Notice to Amend, and the exhibits attached to the

Complaint, the Court believes that the Plaintiff alleges that the following occurred: Sandra

Strader obtained a mortgage for the House. At some point, Sandra Strader and Plaintiff began

contacting various entities related to the mortgage (a law firm, US Bank, etc.) challenging the

legitimacy of the mortgage. An action for mortgage foreclosure was brought in the Court of

Common Pleas in Allegheny County by US Bank NA C/O Nationstar Mortgage, No. MG-15-

001358 ("Foreclosure Action"). It appears the Foreclosure Action was brought after Sandra

4

Strader passed away, so the case was brought against her heirs, namely Plaintiff and Sonya Strader.

Turning to Plaintiff's allegations, Plaintiff pleads that the Defendants committed numerous violations of the FDCPA and also violated state law. The factual allegations[2] giving rise to these claims can best be summarized as follows:

On May 30, 2016, Nationstar "broke in and seized" the House. Compl. ¶ 7. Nationstar locked Plaintiff and others out of the house without ever presenting a warrant or court order. *Id.* ¶ 7. The House had a sign that said "no trespassing," and Plaintiff was already "in court with communication by mail." *Id.* ¶ 7. Upon entering the house, Nationstar "went through every room closets, drawers, cabinets, took pictures stole money and items in the house." *Id.* ¶ 10. Someone called the Penn Hills police and a report was taken. *Id.* ¶ 11. No copy of the police report was attached to any of Plaintiffs' pleadings.

At some point, though it is unclear from the Complaint when, US Bank and Nationstar communicated with numerous third parties, including a sheriff, property inspectors, neighbors, and others. *Id.* ¶ 15. US Bank and Nationstar also communicated with newspapers and placed Plaintiff and others' names in the paper "saying [Plaintiff and family] owe a debt to a debt collector." *Id.* ¶ 15. US Bank and Nationstar, through its attorneys and employees, continued to communicate with Plaintiff and his family despite never having Plaintiff's permission nor a court order allowing them to contact the family. These communication attempts continued after the debt was "in dispute" and after US Bank and Nationstar were told in writing to cease and desist. *Id.* ¶ 19. "Defendants" filed "fraudulent deceptive forms and fraudulent affidavits in the county

---

[2] Plaintiff's Complaint contains numerous recitations of statutes and legal definitions that this Court disregards in its attempts to understand Plaintiff's factual allegations. *See, e.g.*, Compl. ¶ 5.

5

record." *Id.* ¶ 20. Plaintiff does not specify which Defendants did so and does not describe the "forms" or "affidavits." It is unclear if Plaintiff is referring to one of the many documents attached as exhibits to the Complaint. Plaintiff also claims that "Defendants," again not specifying which Defendants, misrepresented the debt as a foreclosure and misrepresented the amount of the alleged debt when they filed "their deceptive forms" in state court. *Id.* ¶ 21–22. Plaintiff claims the debt was "rescinded for fraud by us" in 2009. *Id.* ¶ 22. Defendants allegedly sent communications to Plaintiff and his family that demanded fees and expenses that had yet to be incurred, such as attorney fees, property inspection, and valuation fees. Plaintiff also alleges that signatures on documents attached as Exhibit 1 to the Complaint are false, and Defendants have refused to engage with Plaintiff on whether the signatures are genuine. *Id.* ¶ 36.

Plaintiff alleges that specific Defendants US Bank, Mathew Eyet, Alina Eyet, William Sandelands, Cara Ann Murphy, Mitchell E Zipkinand, and Sandeland Eyet LLP allegedly communicated with Plaintiff but failed to disclose that they are debt collectors. *Id.* ¶ 40. Finally, Plaintiff alleges that Matthew Eyet, Alina Eyet, William Sandelands, Cara Ann Murphy, Mitchell E Zipkinand, and Sandeland Eyet LLP never provided Plaintiff with a "dunning letter" that states his right to dispute a debt and informs Plaintiff that the Defendants are debt collectors.

### B.    State Court Foreclosure Action

Plaintiff's Complaint and attached exhibits reference the Foreclosure Action, filed on September 29, 2015, by US Bank. Compl, Ex. 3. Vance Strader filed an answer in that case on May 3, 2016. Foreclosure Action, Doc. 17. In that Answer, Plaintiff filed counterclaims against US Bank, Richard Davis, Michael Bengtson, Nationstar, Jay Bray, Saline Baca, Jessica Moore, Andrea Friedrich, William Viana, Shapiro and DeNardo, Katherine Wolf, and Sarah McCaffery for claims under the FDCPA (Count 1), RICO (Count 2), unjust enrichment (Count 3), abuse of

6

process (Count 4), and invasion of privacy (Count 5). *Id.* Plaintiff amended his answer on May 23, 2016, to add additional counterclaims for Libel and Slander (Count 6)[3] and Fraud (Count 7).[4] *Id.* at Doc. 19. Plaintiff amended again on October 14, 2016, to add Sandelands Eyet LLP and Mitchell E Zipkin as Defendants to the FDCPA counterclaim and the unjust enrichment counterclaim. *Id.* at Doc. 40. US Bank filed Preliminary Objections to the counterclaims, asserting, in part, that Plaintiff's pleadings failed to conform to applicable pleading rules, failed to set forth a legally sufficient claim, and improperly asserted counterclaims related to the servicing of a mortgage loan in an *in rem* foreclosure action. *See id.* at Doc. 41, ¶¶ 14–20.  In an order dated November 17, 2016, Common Pleas Judge Robert Colville sustained US Bank's Objections and dismissed Mr. Strader's counterclaims without prejudice. *Id.* at Doc. 47 ("November 17 Order"). The November 17 Order states:[5]

> AND NOW, this *17* day of *November, 2016*, upon consideration of the Preliminary Objections (the Objections") of plaintiff U.S. Bank National Association, as Trustee for Merrill Lynch First Franklin Mortgage Loan Trust, Mortgage Asset-Backed Certificates, Series 2007-4 ("U.S. Bank") and upon consideration of all papers filed in support of the Objections, and any opposition thereto, it is hereby ORDERED and DECREED that Plaintiff's Objections *to plaintiff's[6] Amended Answer and Counterclaims filed 10/14/16* are hereby SUSTAINED and Defendants' Counterclaims and paragraphs 10-19, 22-32, 35, 36, 40-43, 82, 103, and 104 of the Affirmative Defenses are DISMISSED. ~~with prejudice.~~
>
> BY THE COURT
>
> *Colville*, Judge
>
> *Defendant is granted leave to file a single an* [sic] *Amended Answer, Affirmative Defenses and/or Counterclaims within 20 days if warranted. It is respectfully, but strongly,*

---

[3] In the Amended Answer, Plaintiff labels this as Count 5, but since there is already a Count 5, the Court treats this as Count 6 of his Common Pleas Amended Answer.

[4] In the Amended Answer, Plaintiff labels this as Count 6, but since the libel and slander claim is considered Count 6, the Court treats this as Count 7 of his Common Pleas Amended Answer.

[5] The normal styled font indicates type-written language, the italicized font indicates handwritten language, and the stricken font indicates type-written language that was crossed out by hand.

[6] [sic]. Mr. Strader, who filed the relevant amended answer is a defendant in the Foreclosure Action.

*recommended that Defendant[s] obtain legal counsel to assist in the preparation of future pleadings.*

According to Allegheny County Department of Court Records as of the date of this Opinion, this is the last docket entry in the case.[7]

In this case, Defendants filed a Motion to Dismiss pursuant to both Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Plaintiff filed objections to Defendants' Motion and a Brief in Support of his Objections. ECF Nos. 22, 23. Defendants replied to Plaintiff's objections, and Plaintiff filed another set of objections. ECF Nos. 22, 26. The Motion is now ripe for disposition.

## II. Motion to Dismiss Standards

A motion to dismiss pursuant to both Fed. R. Civ. P. 12(b)(1) and 12(b)(6) requires two different legal standards. The Court may "grant a Rule 12 (b) (1) motion to dismiss for lack of subject matter jurisdiction based on the legal insufficiency of a claim." *Kehr Packages v. Fidelcor, Inc.*, 926 F.2d 1406, 1408–09 (3d Cir. 1991). Dismissal under 12(b)(1) for insufficiency is only proper when "the claim 'clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or . . . is wholly insubstantial and frivolous.'" *Id.* (quoting *Bell v. Hood*, 327 U.S. 678, 682 (1946)).

When reviewing a Rule 12(b)(6) motion, the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). Plaintiff's factual allegations must "raise a right to relief above the speculative level" and state a "plausible claim for relief" to survive a

---

[7] Court records publically available at https://dcr.alleghenycounty.us/Civil/LoginSearch.aspx.

motion to dismiss. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Court need not accept as true any unsupported conclusions, unsupported inferences, and "threadbare recitals of elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[8]

Typically, the Court "must assume jurisdiction over a case before deciding legal issues on the merits." *Kehr*, 926 F.2d at 1408–09 (citing *Bell*, 327 U.S. at 682). Thus, the Court must first find jurisdiction exists (thereby denying the 12(b)(1) motion) before it may address any merits of a claim. While a claim must be wholly insubstantial to be dismissed under a motion pursuant to Rule 12(b)(1), more is required to withstand a motion brought under Rule 12(b)(6) motion. *Kehr*, 926 F.2d at 1409.

### III. Discussion

Defendants argue the Complaint must be dismissed under both Rule 12(b)(1) for lack of subject matter jurisdiction and Rule 12(b)(6) for failure to state a claim. Defendants appear to make two arguments. First, Defendants argue the federal claims, taken together, are immaterial, made for the purpose of obtaining jurisdiction, and/or wholly insubstantial and frivolous. Thus, the entire case should be dismissed as not involving any federal controversy, which deprives this Court of any subject matter jurisdiction. Second, if the Complaint and Notice to Amend establish a federal controversy, the sole federal claims arising under the FDCPA fail under the higher Rule

---

[8] In Plaintiff's Objections to Dismiss Claim with Prejudice, ECF No. 22, Plaintiff claims that he is held to a less stringent pleading standard. *See* ECF No. 22, ¶ 13. It is true that pro se plaintiffs are not held to the same standard as lawyers when the Court analyzes formal pleadings, but any pleading must still contain sufficient factual allegations that, when accepted as true, "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678; *see also Fantone v. Latini*, 780 F.3d 184, 193 (3d Cir. 2015) (recognizing that a pro se complaint must also satisfy *Twombly* and *Iqbal*'s pleading standard).

9

12(b)(6) standard. If the FDCPA claims are dismissed, Defendants argue, this Court should decline to exercise supplemental jurisdiction over any remaining state law claims.

Before the Court may reach the merits of the claims, the Court must address Defendants' Motion pursuant to Rule 12(b)(1) first.

## A. Rule 12(b)(1) Subject Matter Jurisdiction

Plaintiff's Complaint devotes significant attention to "Count 1," the claims arising under the FDCPA, a federal statute. "Before deciding that there is no jurisdiction, the District Court must look to the way the complaint is drawn to see if it is drawn so as to claim a right to recover under the Constitution and laws of the United States." *Bell*, 327 U.S. at 681. In that regard, it is thus clear to this Court that Plaintiff does seek relief for Defendants' alleged violations of federal law. *Id.* In *Bell*, the Supreme Court noted two exceptions to the general rule that a district court must entertain a complaint drawn to seek recovery directly under the Constitution or federal law: when federal law is invoked solely for obtaining jurisdiction or where such claim is wholly insubstantial and frivolous. *Id.* at 682–83. Neither of these exceptions apply to Plaintiff's Complaint.

First, Plaintiff does not appear to invoke the FDCPA merely to get his case into federal court. While the merits of his FDCPA will be addressed later in this Opinion, it is plain that Plaintiff seeks relief for allegedly improper debt collection practices. Defendants allege that Plaintiff brings this case merely to collaterally attack the foreclosure proceeding in state court. Plaintiff is not seeking any sort of injunctive relief. Rather, Plaintiff seeks money damages based on the conduct of the Defendants in their alleged roles as debt collectors. It is not the foreclosure itself that Plaintiff challenges; it is the conduct and behavior of the alleged debt collectors during

10

the events related to the foreclosure that give rise to Plaintiff's asserted claims. This is squarely within the FDCPA and confers federal question subject matter jurisdiction on this Court, and if those FDCPA claims survive, there is supplemental jurisdiction over the remaining state law claims.

Second, Plaintiff's FDCPA claims are not "wholly insubstantial and frivolous." It may be prolix in some places and scant in others, but Plaintiff goes to great lengths to describe specific behavior he believes entitles him to relief. For example, Plaintiff alleges certain Defendants broke into the House and stole his possessions. Compl. ¶¶ 7, 10. This event gave rise to the police showing up at the scene and taking a report. *Id.* ¶ 11. Plaintiff also alleges inappropriate communications by debt collectors. *Id.* ¶ 19. Plaintiff alleges deceptive forms, misrepresented information about the debt, and demands for fees and costs not yet incurred. *Id.* ¶¶ 20, 21, 32. While Defendants may challenge these accusations as failing to state a claim upon which relief may be granted, Plaintiff's federal claims as stated are not so frivolous or insubstantial that this Court should decline to reach the merits of the case on jurisdictional grounds.

Concluding that Plaintiff's Complaint and Notice to Amend at least facially properly seeks relief under federal law, this Court exercises federal question subject matter jurisdiction based on the FDCPA claims. Whether the Court will exercise supplemental jurisdiction over the remaining state law claims depends on whether the FDCPA claims survive the Rule 12(b)(6) standard described above. The Court now turns to that issue.

## B.     Rule 12(b)(6) Failure to State Claims

Defendants argue Plaintiff's claims, both the FDCPA and state law claims, must be dismissed for failure to state a claim based a number of theories. First, Defendants argue that all

11

the claims do not meet the adequate pleading requirements and run afoul of Federal Rule of Civil Procedure 8. Second, Defendants argue that Plaintiff is precluded from litigating his claims in this Court because they were already litigated to conclusion in the state foreclosure action. Third, Defendants argue even if the claims are not precluded, this Court should abstain (decline to exercise jurisdiction over this case) based on two abstention doctrines addressing parallel state and federal cases. Defendants present additional arguments with respect to each claim, but the Court begins with a brief discussion of these three defenses that Defendants assert span all the claims. Then, the Court will address each of Plaintiff's claims and Defendant's corresponding arguments in support of dismissal.

### 1. Initial Defenses

#### a. Failure to State a Claim and to Conform with Rule 8

Plaintiff must plead facts which permit the court to make a reasonable inference that the Defendants are liable. *Twombly*, 550 U.S. at 556–57; *Iqbal*, 556 U.S. at 678. Leave to amend "shall be freely given when justice so requires." *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000) (quoting Fed. R. Civ. P. 15).

As stated in Rule 8(a)(2), any complaint filed in federal court must contain "a short and plain statement of [any] claim showing that the [Plaintiff] is entitled to relief." Despite the Rule's instruction to keep it short and sweet, both the Court and the opposing parties must be able to understand the nature of each individual claim. *See Glover v. FDIC*, 698 F.3d 139, 147 (3d Cir. 2012). This requires the Plaintiff to present his claims clearly to avoid others having to "forever sift through its pages in search of the nature of" the claims. *Id.* (quoting *Jennings v. Emry*, 910 F.2d 1434, 1436 (7th Cir. 1990)). When a complaint becomes too confusing or unfocused, it fails to give requisite fair notice to the Defendants, and the claims should be dismissed.

12

However, because cases are better off being decided on the merits, a plaintiff should be allowed to amend his pleadings unless there is "undue delay, bad faith or dilatory motive on the part of the movant; repeated failure to cure deficiencies by amendments previously allowed; prejudice to the opposing party; [or] futility." *Mullin v. Balicki*, 875 F.3d 140, 149 (3d Cir. 2017). This Court will apply these principles as appropriate in each claim below.

## b. *Issue Preclusion*

Defendants aver that because Plaintiff brought counterclaims in the state court foreclosure action that are "substantially similar" to Plaintiff's claims here, he cannot litigate those issues again in federal court.

When a matter has been litigated and decided, preclusion issues arise, which can bar re-litigation of certain matters. *See Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1 (1984). Here, the doctrine of issue preclusion (known as collateral estoppel) is alleged to bar re-litigation of the counterclaims. "The purpose of precluding 'parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions.'" *M&M Stone Co. v. Pennsylvania*, 388 F. App'x 156, 162 (3d Cir. 2010) (quoting *Montana v. United States*, 440 U.S. 147, 153–54 (1979)).

The Full Faith and Credit statute, 28 U.S.C. § 1738, requires this Court to give a prior state judgment the same preclusive effect as would the adjudicating state; in this case, Pennsylvania. *Hill v. Barnacle*, 598 F. App'x 55, 57 (3d Cir. 2015) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293 (2005). Thus, Plaintiff is only precluded from

13

bringing his claims in this Court if he is precluded from bringing his claims in a Pennsylvania court under Pennsylvania law. *Hill*, 598 F. App'x at 57.

When a Rule 12(b)(6) motion raises issue preclusion concerns, and Plaintiff has not included the relevant prior adjudications in his pleadings, the Court "must still consider the prior adjudication in order to determine whether issue preclusion bars that plaintiff's claims." *M & M Stone Co.*, 388 F. App'x at 162. The Court may take judicial notice of the prior judicial opinion as a public record at the motion to dismiss phase, but it only does so "to establish the existence of the opinion, and not for the truth of the facts asserted in the opinion." *Id.* (citing *Lum v. Bank of Am.*, 361 F.3d 217, 221 n.3 (3d Cir. 2004)). Therefore, the Court takes judicial notice of the November 17 Order.

Under Pennsylvania law, the following conditions must exist to invoke issue preclusion:

(1) the issue decided in the prior adjudication was identical with the one presented in the later action;

(2) there was a final judgment on the merits;

(3) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication; and

(4) the party against whom it is asserted has had a full and fair opportunity to litigate the issue in question in a prior action.

*M&M Stone Co.*, 388 F. App'x at 162. Here, the second element is clearly not met because the November 11 Order was not a final judgment on the merits. The November 11 Order crossed out the printed language "with prejudice" and granted Mr. Strader and his fellow defendants the opportunity to amend their counterclaims. It even encouraged Mr. Strader to obtain legal counsel in his pursuit of his counterclaims. This order is clearly a dismissal without prejudice, and an order dismissed without prejudice does not affect one's rights to reassert claims in further proceedings. *In re Bell*, 25 A.2d 344, 350 (1942). In other words, a dismissal without

14

prejudice is not a final judgment for purposes of preclusion. *Id.*; *Fox v. Garzilli*, 875 A.2d 1104 (Pa. Super. 2005). Thus, the Court denies Defendants' Motion with respect to issue preclusion.

### c. *Abstention Doctrines*

Defendants argue the *Younger* doctrine requires this Court to abstain from exercising jurisdiction because taking jurisdiction over this case would offend principles of comity by interfering with the ongoing state foreclosure proceeding. Defendants cite to a three-part test from *Matusow v. Trans-County Title Agency, LLC*, 545 F.3d 241, 248 (3d Cir. 2008) ("(1) [T]here are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal claims.").

As a preliminary matter, an action for damages (as opposed to declaratory or injunctive relief) should not be dismissed based on abstention. *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 721 (1996) ("By contrast, while we have held that federal courts may stay actions for damages based on abstention principles, we have not held that those principles support the outright dismissal or remand of damages actions.").

Assuming Defendants would prefer a stay pending the outcome of the foreclosure action, their cited test, at least by itself, is not the proper test for *Younger* abstention in light of the Supreme Court's 2013 decision in *Sprint Communications, Inc. v. Jacobs*, 134 S. Ct. 584 (2013). As both the Supreme Court explained in *Sprint* and our Court of Appeals explained in *Hamilton v. Bromley*, 862 F.3d 329, 337 (3d Cir. 2017), *Younger* abstention only applies in three

exceptional[9] circumstances: (1) ongoing state criminal prosecutions; (2) certain civil enforcement proceedings; and (3) pending civil proceedings involving orders uniquely in furtherance of a state courts' ability to perform its judicial functions. 134 S. Ct. at 593 (quoting *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 368 (1989) ("NOPSI")). Only after the Court finds the matter fits within one of those three categories should it apply the three factors cited by Defendants in assessing whether *Younger* abstention is proper. *Hamilton v. Bromley*, 862 F.3d at 337.

Defendants have not shown that the state foreclosure proceedings belong to one of the categories of proceedings to which *Younger* may apply. Their incomplete analysis of the *Younger* doctrine leads this Court to conclude that the Court should not take the extraordinary step to abstain from exercising jurisdiction over this case on *Younger* grounds. *See Dowell v. Bayview Loan Servs., LLC*, No. 16-cv-02026, 2017 U.S. Dist. LEXIS 69149, at *24 (M.D. Pa. May 4, 2017) ("Because the defendants do not address the threshold question of whether this case falls within any of the three exceptional categories of cases that may warrant *Younger* abstention, we conclude that they have not shown that the Court should abstain from exercising jurisdiction.").

To be sure, the Court undertook its own research on the matter, and is unpersuaded that any of the three exceptional circumstances are met. The Foreclosure Action is certainly not a criminal prosecution. It is not even quasi-criminal so as to be considered a civil enforcement

---

[9] Post-*Sprint* cases reinforce the principle that this abstention doctrine is to apply only in "exceptional" circumstances as an unusual deviation from the general rule that federal courts must take cases that are within their jurisdiction. This is not a doctrine that should be invoked merely because a pending state court proceeding involves the same subject matter. *See Gonzalez v. Waterfront Comm'n of the N.Y. Harbor*, 755 F.3d 176 (3d Cir. 2014); *Sprint*, 134 S. Ct. at 588, 591.

16

proceeding.[10] It is not a pending civil proceeding involving orders uniquely in furtherance of a state courts' ability to perform its judicial functions. Plaintiff is not attacking state court judicial decisions or functions.[11] "That category applies to such things as state courts' enforcement of their contempt procedures and postjudgment collection procedures." *Wells Fargo Bank, N.A. v. Carnell*, No. 3:16-cv-130, 2017 U.S. Dist. LEXIS 62695, at *12 (W.D. Pa. Apr. 25, 2017). It is the state court's November 11 Order itself that allows Plaintiff the opportunity to take his claims out of state court and into federal court. There is nothing here that hinders the "state courts' ability to perform their judicial functions." 134 S. Ct. at 591.

This conclusion is in line with other post-*Sprint* cases in our Circuit that have declined to apply *Younger* abstention when the underlying state action is a foreclosure action absent a request to enjoin state proceedings[12] because it does not fall into any of the three categories. *See Dowell*, 2017 U.S. Dist. LEXIS 69149 (collecting cases in the Third Circuit).

---

[10] A state civil enforcement proceeding must be "quasi-criminal" in nature, which carries characteristics such as an action commenced by the State in its sovereign capacity, initiated to sanction the plaintiff for some wrongful act, or any other similarity to a criminal action. *Acra Turf Club, Ltd. Liab. Co. v. Zanzuccki*, 748 F.3d 127, 138 (3d Cir. 2014); *Sprint*, 134 S. Ct. at 593.

[11] Cases in the third category typically involve a state court's attempt to effectuate its orders. *See, e.g.*, *Juidice v. Vail*, 430 U.S. 327, 335–36 (1977) (civil contempt order). Moreover, these types of cases involve a federal plaintiff asking a federal court to enjoin a state proceeding. *See Devlin v. Kalm*, 594 F.3d 893, 894–95 (6th Cir. 2010). That is not the case here.

[12] *See, e.g.*, *Calizaire v. Mortg. Elec. Registration Sys.*, No. 14-cv-1542, 2017 U.S. Dist. LEXIS 31436, at *7–8 (E.D.N.Y. Mar. 6, 2017). In *Calizaire*, the plaintiff demanded injunctive and declaratory relief related to the same property that was the subject matter of the underlying foreclosure action in state court. The plaintiff asked the federal court to set aside foreclosure proceedings and the sale of the subject property and to determine the rights and obligations of the parties with respect to the subject property currently under the jurisdiction of the state court. Thus, the case fell within the third category, and abstention was appropriate over the claims for injunctive and declaratory relief. However, the Court did not abstain from claims for money damages.

17

Defendants' argument even fails its own incomplete three-factor test because the Foreclosure Action does not afford or continue to afford Plaintiff a full and fair opportunity to litigate all of his claims. Defendants sought dismissal of Plaintiff's counterclaims in the Foreclosure Action, in part on the basis that his claims for damages were inappropriate because the Foreclosure Action was an *in rem* proceeding. *See* Foreclosure Proceeding, Doc. 41, ¶¶ 18–20. It is true that, in Pennsylvania, "[a]n action in mortgage foreclosure is strictly an *in rem* proceeding, and the purpose of a judgment in mortgage foreclosure is solely to effect a judicial sale of the mortgaged property." *N.Y. Guardian Mortg. Corp. v. Dietzel*, 524 A.2d 951, 953 (Pa. Super. 1987). Claims seeking money damages based on consumer protection laws cannot be asserted in the foreclosure action. *Id.* Such claims, therefore, do not and cannot in any way interfere with the state court's ability to assess and enforce one's rights to foreclose on a property. For Defendants to now assert that Plaintiff's Complaint as a whole "fall[s] squarely within the purview of the state court proceeding"[13] is disingenuous at best.[14] It is true that some of the state law claims, despite seeking money damages, allege liability on the basis of bringing a foreclosure action without the legal right to do so. However, Defendants have failed to show how a possible damages award for Plaintiff would interfere with the state action, especially with respect to claims that are no longer pending in state court. The Court will not abstain on the basis of *Younger*.

Defendants also argue this Court should exercise its discretion to abstain on the basis of the *Colorado River* doctrine. "The general rule regarding simultaneous litigation of similar issues

---

[13] Defs. Br. in Supp., ECF No. 19, at 22.

[14] Defendants assert throughout their papers that Plaintiff's pleadings are merely a collateral attack on the actual foreclosure and suggest Plaintiff is seeking rescission. The Court does not detect any genuine requests for injunctive relief in the Complaint.

18

in both state and federal courts is that both actions may proceed until one has come to judgment, at which point that judgment may create a res judicata or collateral estoppel effect on the other action." *Univ. of Md. v. Peat Marwick Main & Co.*, 923 F.2d 265, 275–76 (3d Cir. 1991). In extremely narrow circumstances, a federal court may stay or dismiss "a federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration," including conservation of judicial resources, but such refraining is "considerably more limited than the circumstances appropriate for abstention." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 818 (1976).

The *Colorado River* doctrine is a two-part test. First, the Court must determine whether there is a parallel state proceeding that raises "substantially identical claims, raising nearly identical allegations and issues." *Yang v. Tsui*, 416 F.3d 199, 204 n.5 (3d Cir. 2005) (internal quotation and citation omitted). "If the proceedings are parallel, courts then look to a multi-factor test to determine whether 'extraordinary circumstances' meriting abstention are present." *Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*, 571 F.3d 299, 307–08 (3d Cir. 2009) (quoting *Spring City Corp. v. Am. Bldgs. Co.*, 193 F.3d 165, 172 (3d Cir. 1999). The Court need not delve into the second factor because the first factor is clearly not satisfied.

Plaintiff brought various counterclaims in the Foreclosure Action which undoubtedly overlap with most of the claims at issue in this case. However, all Plaintiff's counterclaims were dismissed without prejudice and are no longer pending in state court. This case and the Foreclosure Action are not parallel proceedings. *See Dowell*, 2017 U.S. Dist. LEXIS 69149, at *36–39 (explaining parallelism and concluding state foreclosure action and federal action not parallel). Generally, cases are parallel when they involve the same parties and claims. *Ryan v. Johnson*, 115 F.3d 193, 196 (3d Cir. 1997). This case and the Foreclosure Action do not involve

19

the same claims because the state court dismissed the claims that are now pending before this Court. "[W]hen a federal court case involves claims that are distinct from those at issue in a state court case, the cases are not parallel and do not justify Colorado River abstention." *Trent v. Dial Med.*, 33 F.3d 217, 224 (3d Cir. 1994). The Court need not address the second factor and will not apply *Colorado River* abstention.

With these "big picture" defenses discussed (and preclusion and abstention arguments disposed of), the Court now turns to Plaintiff's individual claims.

## 2.    FDCPA Claims

Plaintiff alleges numerous claims under the FDCPA. Defendants argue all claims under the FDCPA should be dismissed with prejudice pursuant to any combination of the statute of limitations, the fact that a foreclosure action itself is not a collection of debt under the FDCPA, attorney immunity, and a general failure to comply with Rule 8(a) and to plead sufficient factual matter to state a claim to relief that is plausible on its face. The Court will briefly address each of Defendants' FDCPA defenses and then turn to Plaintiff's FDCPA claims.

### a.    *Foreclosure action as a collection of debt*

Defendant argues that the filing of a foreclosure action cannot be a collection of debt under the FDCPA. Defendants argue that "federal courts nationwide have expressly recognized that the FDCPA does not apply to enforcement of security interests against property." Br. in Supp., ECF No. 19, at 10. Defendants contend that Plaintiff is barred from raising claims involving the Foreclosure Action because such claims do not involve a collection of debt, as required by the FDCPA. But, Defendants then cite to *Glazer v. Chase Home Finance LLC*, 704 F.3d 453 (6th Cir. 2013) for support. *Glazer* held the opposite and explicitly rejected the rational

that the enforcement of a security interest is not debt collection. *Id.* at 461. The Court of Appeals concluded that "every mortgage foreclosure, judicial or otherwise, is undertaken for the very purpose of obtaining payment on the underlying debt, either by persuasion (i.e., forcing a settlement) or compulsion (i.e., obtaining a judgment of foreclosure, selling the home at auction, and applying the proceeds from the sale to pay down the outstanding debt)." *Id.* The Court of Appeals could not have been more clear: "Accordingly, mortgage foreclosure is debt collection under the FDCPA." *Id.*

Regardless, *Glazer* is a Sixth Circuit decision. Despite Defendants' omission of any Third Circuit authority, it is well-settled in our Third Circuit that "foreclosure meets the broad definition of 'debt collection' under the FDCPA." *Kaymark v. Bank of Am., N.A.*, 783 F.3d 168, 179 (3d Cir. 2015).[15] To hold otherwise would "create an enormous loophole in the FDCPA by immunizing any debt from coverage if that debt happened to be secured by a real property interest and foreclosure proceedings were used to collect the debt." *Id.* (quoting *Wilson v. Draper & Goldberg, P.L.L.C.*, 443 F.3d 373, 376 (4th Cir. 2006)). The Court will follow Third Circuit law.

### b. Attorney Immunity

Defendants argue that litigants and their attorneys are immune from challenges to statements and allegations of falsified filings made in the Foreclosure Action because communications made in the course of judicial proceedings are absolutely privileged. For support, Defendants cite to *Smith v. Griffiths*, 476 A.2d 22, 24 (Pa. 1984), and *Pawlowski v. Smorto*, 588 A.2d 36, 41 (Pa. Super. 1991). Both deal with defamation suits. Pennsylvania does

---

[15] Defendants do not cite to any cases in the Third Circuit, so they offer no reason the Court should deviate from well-settled Circuit precedent.

provide immunity for statements made by litigants and attornies in judicial proceedings with respect to defamation claims. *Pawlowski*, 588 A.2d at 41. While Plaintiff makes references to unflattering publications (that issue is addressed more fully below), Defendants seek to use the state judicial proceedings privilege to bar more than issues possibly related to defamation. Defendants seek immunity from any allegations of false statements, falsified filings, and any other action that occurred within the foreclosure litigation. Once again, this is not the law.

The Supreme Court of the United States rejected such an argument that lawyers' statements, communications, and/or filings are immune from FDCPA liability in *Heintz v. Jenkins*, 514 U.S. 291, 294 (1995). In fact, Plaintiff, who is not a lawyer, referenced this case in his Complaint at Paragraph 17. Defendants, on the other hand, made no reference to the case. The *Heintz* opinion held that the FDCPA "does apply to lawyers engaged in litigation." *Id.* at 294. A lawyer who "regularly, through litigation, tries to collect consumer debts" may be liable under the FDCPA if he or she uses violence, obscenity, or repeated annoying phone calls; *falsely represents the character, amount or legal status of a debt*; or uses unfair or unconscionable means to attempt to collect on a consumer debt. *Id.* at 292 (citing 15 U.S.C. §§ 1692d, 1692e(2)(A), 1692f) (emphasis added).

In case there is any doubt that *Heintz* applies to litigation documents themselves, our Court of Appeals spoke to that in *Kaymark*, 783 F.3d at 176–79. The defendant in *Kaymark* argued that the foreclosure complaint could not be the basis of an FDCPA claim. *Id.* at 176. The Court rejected that argument, concluding "that a communication cannot be uniquely exempted from the FDCPA because it is a formal pleading or, in particular, a complaint." *Id.* at 177.

Thus, the FDCPA can apply to any attorney who engaged in prohibited debt-collecting activity, and the Court will disregard state common law litigation privileges. *See Sayyed v.*

22

*Wolpoff & Abramson*, 485 F.3d 226, 228, 229 (4th Cir. 2007) (rejecting application of state law litigation immunity to federal FDCPA claim against attorney); *see also Hartman v. Great Seneca Fin. Corp.*, 569 F.3d 606, 616 (6th Cir. 2009) ("Given the Supreme Court's detailed analysis and clear conclusion in *Heintz* that the FDCPA does apply to litigation-related activity, we believe . . . the First Amendment does not shield lawyers engaged in litigation from FDCPA liability.")

<em>c.    Statute of Limitations</em>

Defendants argue that even if the Foreclosure Action is a form of debt collection (which it is) and even if attorneys can be liable for litigation-related activity that violates the FDCPA (which they can), Plaintiff's claims are barred by the statute of limitations.

The FDCPA imposes a one-year statute of limitations from the date of the alleged violation. 15 U.S.C. §1692k(d); *see Glover v. FDIC*, 698 F.3d 139, 145 (3d Cir. 2012). Alleged violations predicated upon the filing of a foreclosure action are deemed to have occurred on the date in which the case was filed and cannot be tolled by the continuing violation doctrine. *Schaffhauser v. Citibank (S.D.) N.A.*, 340 F. App'x 128, 131 (3d Cir. 2009); *Kohar v. Wells Fargo Bank, N.A.*, 2016 WL 1449580, at *3 (W.D. Pa. Apr. 13, 2016).

Plaintiff filed his Motion for Leave to Proceed *in forma pauperis*, attaching the Complaint, on May 26, 2017.[16] Defendants argue any alleged FDCPA violation that occurred prior to May 26, 2016, is barred by the statute of limitations. According to the state action's docket sheet attached in Exhibit 3 of the Complaint, the foreclosure action was filed on

---

[16] While the Complaint was submitted on May 26, 2017, and filed on May 31, 2017, Defendants do not contest that violations "must have occurred on or after Mary 26, 2016, at the earliest, in order for the claims to be timely." Defs. Br. in Supp., ECF No. 19, at 9. Therefore, the Court need not grapple with the two "filing" dates of the Complaint.

September 29, 2015, outside the statute of limitations. Hence, the statute of limitations will bar any FDCPA claim premised solely on the filing of foreclosure litigation. *See id.*

There is a split among the district courts in our Circuit as to whether discrete acts occurring within the foreclosure litigation are tied to the filing date of that action or the date in which the discrete act occurred. *Compare Kohar*, 2016 WL 1449580, at \*3 ("[T]he statute of limitations bars the FDCPA claim challenging the Defendants' conduct throughout the foreclosure litigation which was commenced" outside the statute of limitations.), *with Brown v. Udren Law Offices PC*, No. 11-cv-2697, 2011 WL 4011411, at \*5–6 (E.D. Pa. Sept. 9, 2011) ("Conduct which independently violates the FDCPA, however, is actionable if it falls within the limitations period, even if undertaken in pursuit of litigation that was filed outside the limitations period."), *and* d *Jones v. Inv. Retrievers, LLC*, No. 10-cv-1714, 2011 WL 1565851, at \*3 (M.D. Pa. Apr. 25, 2011) ("[A]ctions occurring within the limitations period are not necessarily off-limits under the FDCPA just because the actions fall within the scope of a lawsuit which was filed outside the limitations period.").

In *Jones*, the plaintiff alleged that defendants violated the FDCPA when they "failed to provide her with documents supporting alleged entitlement to payment, failed to provide her attorney with documents upon request, [and] indicated that they did not have supporting documentation verifying the debt." 2011 WL 1565851, at \*4. All these actions occurred within the one-year statute of limitations but also took place within the state action, which commenced outside the statute of limitations. *Id.* The court concluded that "it is not clear on the face of the complaint that any possible violation of the FDCPA would relate back to the filing of the lawsuit; i.e., that these were simply new communications about old claims. Thus, dismissal [pursuant to Rule 12(b)(6)] on the basis of the statute of limitations is inappropriate." *Id.*

24

*Brown* followed the rational in *Jones* and denied the defendants' motion to dismiss because the plaintiff's complaint "was filed within one year of the most recent alleged FDCPA violation." *Brown*, 2011 WL 4011411, at *6. The plaintiff's theory was not one that rested on the defendants' mere continued participation in the underlying state litigation, it was the fact that the defendants allegedly committed acts, "which independently violates the FDCPA" even though those acts may have been "undertaken in pursuit of litigation that was filed outside the limitations period." *Id.*

*Kohar* did not address the opposing view expressed in *Jones* and *Brown*. For support of its position, the Court quoted *Amelio v. McCabe, Weisberg & Conway, P.C*, No. 14-cv-1611, 2015 WL 4545299, at *5 (W.D. Pa. July 28, 2015), stating, "Mere participation in ongoing debt collection litigation does not constitute a continuing violation of the FDCPA." *Kohar*, 2016 WL 1449580, at *3. It is therefore unclear from the *Kohar* opinion whether the plaintiff had alleged FDCPA violations that occurred independent of the filing of a foreclosure action or alleged conduct that went beyond "mere participation."

The Court finds *Jones* and *Brown* persuasive. If otherwise timely or "fresh" violations of the FDCPA were forced to relate back to the date of the filing of the debt collection action, attorneys would, in essence, have immunity for any FDCPA violations committed within one (1) year of the later federal filing if the debt collection began more than one (1) year before the federal filing. Like many cases in both state and federal court, debt collection litigation can last years. To provide this type of blanket shelter from liability would thwart both the purpose of the FDCPA and the Supreme Court's holding in *Heintz v. Jenkins*, 514 U.S. 291 (1995). The Court will therefore address the statute of limitations defense as it pertains to each claim below.

### d. *Analysis of Plaintiff's FDCPA claims*

The Court now turns to Plaintiff's FDCPA claims. Plaintiff groups all claims together under one FDCPA heading, but Plaintiff appears to be asserting numerous violations. Therefore, the Court addresses the claims of Count I of the Complaint by paragraph to discern the nature of the claims and to determine which ones survive Defendants' Motion.[17]

The Court identifies allegations that are "merely conclusory and not entitled to the presumption of truth." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016). First, Paragraphs 5, 8, 9, 12, 17, 18, 24, 25, 26, 29, 30, 31, 34, 43, 52, 56 do not contain factual allegations relevant to FDCPA claims and need not be considered for the purpose of discerning claims.

Paragraphs 1–4 are descriptions of Defendants that contain important jurisdictional information, but they do not relate to Plaintiff's factual allegations. To the extent they establish that each Defendant is a debt collector under the FDCPA, those are legal conclusions that this Court need not consider.

Next, Paragraphs 20, 21, 22, 23, 27, 28, 32, 57, and 58 do not specify which Defendant's (or Defendants') conduct is at issue. There are nine Defendants in this case. It is unclear to whom Plaintiff is referring to with respect to these allegations. Therefore, these paragraphs are insufficient to establish any claims and they fail to satisfy Rule 8 because they cannot possibly put the relevant Defendant on notice.

---

[17] The Notice to Amend the Complaint does not contain any allegations related to the FDCPA claims.

26

Paragraph 13 alleges a violation of 15 U.S.C. § 1692d(1), which prohibits a debt collector from engaging "in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt," and more specifically prohibits such conduct with respect to the "property of any person." 15 U.S.C. § 1692d(1). Paragraph 14 alleges a violation of 15 U.S.C. § 1692f(6), which prohibits the use of nonjudicial action to dispossess another's property. Plaintiff appears to invoke these provisions with respect to Nationstar's seizure of the House on or about May 30, 2016,[18] which is detailed in Paragraphs 7, 10, 11, and 13. Taking the allegations as true, that Nationstar took possessions and money belonging to Plaintiff in the course of taking the House, Plaintiff states a plausible claim under the FDCPA, pursuant to both § 1692d and § 1692f(6), against Nationstar.[19]

Paragraph 15 alleges US Bank and Nationstar violated § 1692c and §1692b when they communicated information about the debt with third parties. However, there are insufficient facts to support this claim. It is unclear from the face of the Complaint what the communications were and when they occurred. Without this information, Defendants cannot possibly understand the nature of the claims. Plaintiff cites to Exhibit 4, but Plaintiff fails to explain what Exhibit 4 is. To the extent it is a copy of a Sheriff's Service History and a copy of a Publication of Notice, it is unclear how these documents would constitute an improper communication under § 1692c (they appear to be related to service of process for the state foreclosure case).

---

[18] Plaintiff filed his Motion for Leave to Proceed *in forma pauperis*, attaching the Complaint, on May 26, 2017. The events allegedly occurred on May 30, 2016, are therefore timely.
[19] The Court disregards the language in Paragraph 13 that this was a "criminal act," as that is a legal conclusion and has no bearing on a plausible claim for FDCPA liability in this civil action. The Court disregards language in Paragraph 14 that Nationstar conducted an illegal search and seizure, for that is a criminal law doctrine outside the scope of this civil action, irrelevant to this civil action, and inapplicable to private actors.

The same is true of Paragraphs 17, 27, 28, 32, 33, 37, 38, 39, 50, 54, 55, and 57. More information would be needed as to the content of the alleged communications or representations, when they each were made, and which Defendant made each communication. While there may be factual allegations in these Paragraphs that support other claims, the Court is unable to decipher any claims that arise out of these Paragraphs.

Paragraph 46 is missing details regarding Plaintiff's requests for verification. Without more about when and how such a verification was requested, Paragraph 46 fails to state a claim for relief.

Paragraphs 16 and 35 are incomprehensible and do not appear to state a claim under the FDCPA.

Paragraph 47 appears to assert an FDCPA violation based on a violation of "rule 601 of frcp." "FRCP" may to refer to the Federal Rules of Civil Procedure, but "rule 601" is likely referring to the Federal Rules of Evidence (specifically the rule on competency to testify), which alone cannot form the basis of an FDCPA violation. The allegations in Paragraph 47 fails to state a claim.

Paragraph 51 appears to conflate various legal doctrines related to negotiable instruments, the Uniform Commercial Code, assignments, and debt verification obligations under the FDCPA. This paragraph is too vague to establish any claim of an FDCPA violation.

Paragraph 36 alleges that Andrew Friedrich and William Viana's signatures on the Corporate Assignment of Mortgage, attached to the Complaint at Exhibit 1, is "false, misleading and deceptive" under § 1692e. While it is unclear exactly which of the sixteen (16) types of debt collector conduct applies to a challenged notary signature, the assignment appears to have been

executed on August 10, 2015. Any claims related to this "Corporate Assignment of Mortgage" to US Bank are time barred by the FDCPA's one-year statute of limitations. The same is true regarding claims made in Paragraph 44, which alleges unlawful practices in reference to Exhibit 1, the Corporate Assignment.

Paragraph 40 references docket entries and then cites to Exhibit 6 of the Complaint, which is a letter from Sandelands Eyet LLP to Plaintiff. Thus, it is unclear what Paragraph 40 is alleging. The Court draws Plaintiff's attention to § 1692g(d) in which legal pleadings (which may be what the docket entries turn out to be) are not considered "initial communication for the purposes of [§ 1692g(a)]." § 1692g(d).

It is unclear who the word "Attorneys" refers to in Paragraph 41. It is unclear what the CFBP consent order refers to, and there are no Consumer Finance Protection Bureau orders attached to the Complaint. The remainder of this Paragraph is confusing and insufficient to state a claim.

While Paragraph 42 identifies which Defendants allegedly violated a provision of the FDCPA, the allegations fail to specify which communication failed to include proper debt collection disclosures. "[I]ts first communication" and "subsequent communications" are insufficient descriptions. Again, the reference to Exhibit 1 is confusing as it does not contain any communications involving any of the Defendants.

Paragraph 45 alleges that certain named Defendants failed to provide Plaintiff with a proper "dunning letter." A dunning letter usually takes the form of a notification from a creditor to a debtor, stating that the debtor is delinquent. Failure to provide an adequate dunning letter constitutes a violation of the FDCPA. *See, e.g.*, *Nokes v. Cavalry Firm*, No. 15-3354, 2016 U.S.

Dist. LEXIS 102012, at *9 (C.D. Ill. Aug. 3, 2016). Along the same vein, "a failure of a debt collector to 'communicate that a disputed debt is disputed' is considered a violation of the FDCPA." *Farren v. RJM Acquisition Funding, LLC*, No. 04-cv-995, 2005 U.S. Dist. LEXIS 15230, at *28 (E.D. Pa. July 26, 2005) (quoting 15 U.S.C. § 1692e(8)) (analyzing on motion for summary judgment whether a dunning letter was deceptive pursuant to 15 U.S.C. § 1692e). Taking the factual allegations of the Complaint as true, Plaintiff states a plausible claim pursuant to the FDCPA against Matthew Eyet, Alina Eyet, William Sandelands, Cara Ann Murphy, Mitchell E Zipkin, and Sandeland Eyet LLP.

Paragraph 48 states a plausible and timely claim against Sandeland Eyet LLP and Mitchell Zipkin pursuant to § 1692g(a) and/or (b). Plaintiff contends that these two Defendants failed to provide a notice of validation of debts within five (5) days of their initial communication "in court," which occurred on August 26, 2016.[20] Thus, any duties arising from this initial communication would be within the statute of limitations. While the initial communication appears to be bound up with the Foreclosure Action, this is not a violation predicated upon the filing of a Foreclosure Action.

Paragraph 49 states factual allegations that theoretically may support other claims, but this Paragraph does not establish any new claims not already addressed herein.

---

[20] Defendants argue that Paragraph 48 lacks "specific allegations as to date of, parties to and content of the communications referenced." Defs.' Br. in Supp., ECF No. 19, at 19. Plaintiff provided an exact date and location in which the communication occurred. Plaintiff specified exactly who made that communication, Sandeland Eyet LLP and Mitchell Zipkin. The content of communication is not what gives rise to a claim under §1692g. The "initial communication" triggers the clock. Plaintiff alleges that these two Defendants failed to provide information in a timely manner. Plaintiff also attached Exhibit 6, which is a letter from Defendant Matthew Eyet "For: Sandelands Eyet LLP," demonstrating the plausible relationship between the Defendants. ECF No. 3-7. This letter also has language circled that states: "This communication is from a debt collector." *Id.*

30

Paragraph 53 alleges that the letter from Matthew Eyet on behalf of Sandelands Eyet LLP dated September 20, 2016, attached to the Complaint at Exhibit 6, fails to comply with § 1692(g)(a) & (b). This section requires a debt collector to relay certain information upon request by a consumer in certain circumstances. Any violations in connection with this letter are within the one-year statute of limitations. There is a reference in the letter to the Foreclosure Action, but the Court cannot conclude from the face of the Complaint that any possible FDCPA violation relates back to the filing of the lawsuit rather than a new communication giving rise to a new claim. *See Jones*, 2011 WL 1565851, at \*4; *Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017) ("A complaint is subject to dismissal for failure to state a claim on statute of limitations grounds only when the statute of limitations defense is apparent on the face of the complaint."). There is sufficient information here to give Defendants notice of Plaintiff's claim. However, Plaintiffs do not offer any facts to show how Alina Eyet, William Sandelands, Cara Ann Murphy, and Mitchell E Zipkin have any relation to this claim. This claim survives Defendants' Motion to Dismiss, but only against Matthew Eyet (the author of the letter) and Sandelands Eyet LLP (Eyet's law firm).

Paragraph 59 appears to challenge venue of the state foreclosure action. The FDCPA does not offer relief for this allegation, nor does this Court have jurisdiction to alter venue in the state foreclosure action.

Paragraph 60 states Plaintiff's request for relief and does not state any additional claim for relief other than those discussed above.

Paragraph 61 appears to state constitutional claims, which were dismissed in this Court's prior Order.

*e.     Conclusion Regarding Plaintiff's FDCPA claims*

To summarize the analysis above regarding Plaintiff's claims pursuant to the FDCPA, the Court concludes that Plaintiff has plausibly stated the following claims pursuant to the FDCPA: (1) against Defendant Nationstar under 15 U.S.C. §§ 1692d and 1692f relating to the pled events of May 30, 2016; (2) against Defendants Matthew Eyet, Alina Eyet, William Sandelands, Cara Ann Murphy, Mitchell E Zipkin, and Sandeland Eyet LLP related to the failure to provide Plaintiff with a proper "dunning letter"; (3) against Defendants Sandelands Eyet LLP and Mitchell Zipkin for failure to provide notice of validation of debts pursuant to § 1692g(a) and/or (b) following an alleged initial communication around August 25, 2016; and (4) against Defendant Matthew Eyet and Defendant Sandelands Eyet LLP under § 1692g related to the September 20, 2016, letter from Matthew Eyet on behalf of Sandelands Eyet LLP.

All remaining claims brought pursuant to the FDCPA are dismissed. Such claims relating to events occurring prior to May 26, 2016, are dismissed with prejudice as time barred by the statute of limitations. However, the remainder of the dismissed FDCPA claims are dismissed without prejudice, and Plaintiff will be granted leave to amend his Complaint and Notice to Amend to attempt to fix the problems identified in this Opinion one final time. Defendants will be free to assert or reassert their arguments as relevant in any motions to dismiss such an Amended Complaint.

## 3.     Count 2: Constitutional Claim

The Complaint states that Count 2 is for constitutional violations. This Court dismissed Count 2 without prejudice on May 31, 2017. Order, ECF No. 2. A Motion for Reconsideration was denied on June 27, 2017. Order, ECF No. 8. While Plaintiff filed the Notice to Amend, that

Notice to Amend does not appear to re-assert these claims. Therefore, such claims are out of this case.

### 4. Count 3: Unjust Enrichment

Plaintiff pleads a claim for unjust enrichment against US Bank, Nationstar, Jay Bray, and Richard Davis. Plaintiff claims that Nationstar and Jay Bray received $100,800 on the "note" (presumably the promissory note secured by the mortgage on the House) without giving consideration. Compl. ¶ 77. It appears this number constitutes "7 years of payment." It is unclear who is making these payments. Plaintiff alleges that he[21] is the holder in due course of the note, and he is entitled to that $100,800. Compl. ¶ 71. Plaintiff has failed to explain how he is a holder in due course of the note. There is insufficient information here as to the nature of this figure and why Plaintiff is entitled to it under a theory of unjust enrichment.

Plaintiff claims US Bank, Richard Davis, Nationstar, and Jay Bray received a benefit of $106,355, but that amount is actually a "liability owed to the Straders." Compl. ¶ 74. It is completely unclear where this different figure originated from other than it is later referenced as "the benefit of credit default swap insurance." There is insufficient information here as to the nature of this figure and why Plaintiff is entitled to it under a theory of unjust enrichment.

Plaintiff claims there was a "sale of the instrument" (that returned $159,532.50, Compl. ¶ 75), unlawful retention of payments (of $240,000, Compl. ¶ 82), and unlawful retention of interest (of $300,000, Compl. ¶ 83). It is entirely unclear from the face of the Complaint which Defendants have these alleged proceeds, what the instrument refers to (sale of the actual House

---

[21] Plaintiff's claims seem to seek relief on behalf of "the Straders," but as the Court stated in prior Orders, Plaintiff is not able to bring claims on behalf of anyone but himself. If Plaintiff retains a lawyer, that lawyer may be able to bring claims on behalf of others.

or just the "note")[22] or where the other figures derive from, and why it would be inequitable for that Defendant to retain such benefit without paying value to Plaintiff.

Plaintiff fails to state an unjust enrichment claim upon which relief may be granted, and this claim is dismissed without prejudice.[23]

### 5. Count 4: Abuse of Process

To the extent this claim restates alleged violations under the FDCPA, those claims are absorbed in Count 1 and do not state an additional claim for abuse of process. Our Court of Appeals summarized a claim for abuse of process under Pennsylvania law:

> [A]buse of process is the improper use of process after it has been issued, that is, a perversion of it. A perversion of legal process occurs when a party uses the process primarily to accomplish a purpose for which the process was not designed. Generally speaking, to recover under a theory of abuse of process, a plaintiff must show that the defendant used legal process against the plaintiff in a way that constituted a perversion of that process and caused harm to the plaintiff.

*Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 304 (3d Cir. 2003) (quotations and citations omitted). Plaintiff appears to be challenging whether various Defendants have standing to bring the Foreclosure Action. More specifically, Plaintiff believes the Defendants do not have standing to bring their Foreclosure Action in state court because they are not the proper holders of the note and mortgage. As a result of their "wrongful" Foreclosure

---

[22] A few paragraphs later in the Complaint, Plaintiff also referred to the $159,532.50 as "proceeds from the sale." Compl., ¶ 81.

[23] Defendants argue the unjust enrichment claim should be dismissed with prejudice because the relationship between the parties is based upon a written mortgage agreement. It is unclear from the face of the Complaint who is actually a party to the mortgage agreement. Without this information, the Court cannot conclude from the face of the Complaint that the Defendants and Plaintiff have a relationship bound in contract. At the same time, the lack of information also makes it impossible for the Court to conclude that Plaintiff has any rights to any proceeds, interest, or funds related to the mortgage under a theory of unjust enrichment.

Action, Plaintiff had to spend hundreds of hours studying the law in order to defend himself and his family.

Defendants argue bringing the Foreclosure Action for the clear purpose of foreclosing on the House is not a perversion of the legal process. "A court must look at the legal process used and decide whether it was used primarily 'to benefit someone in *achieving a purpose which is not the authorized goal of the procedure* in question.'" *Id.* at 305 (quoting *Werner v. Plater-Zyberk*, 799 A.2d 776, 785 (Pa. Super. Ct. 2002) (emphasis appearing in opinion). The Court agrees with the Defendants that the Foreclosure Action is not a perversion of the legal process, and this claim of abuse of process is an inappropriate vehicle to challenge the underlying Plaintiff's standing to enforce the terms of the mortgage (if that is what Plaintiff is trying to do). Count 4 is dismissed with prejudice.

### 6.     Count 5: Invasion of Privacy

Plaintiff brings a claim for invasion of privacy. In Pennsylvania, the limitations period for an invasion of privacy claim is one year. 42 Pa. C.S. § 5523. Pennsylvania law recognizes four torts under the umbrella of invasion of privacy, but Plaintiff appears to rely on the theory of unreasonable publicity given to another's private life. *See Burger v. Blair Med. Assocs., Inc.*, 964 A.2d 374, 376–77 (Pa. 2009) (citing Rest. (Second) of Torts §§ 652B–E (2nd 1979)); *Boring v. Google Inc.*, 362 F. App'x 273, 278 (3d Cir. 2010). In order to state a claim for unreasonable publicity given to private life, Plaintiff must show that the "matter publicized is '(1) publicity, given to (2) private facts, (3) which would be highly offensive to a reasonable person, and (4) is not of legitimate concern to the public.'" *Boring*, 362 F. App'x at 280 (quoting *Harris v. Easton Pub. Co.*, 483 A.2d 1377, 1384 (Pa. Super. Ct. 1984)).

35

Plaintiff alleged the publicity occurred when Defendants "filed a false affidavit and deceptive form without name on it and put it in the public," Compl. ¶ 108, placing Plaintiff's name "in the public on a complaint and in the newspaper." *Id.* ¶ 110. Defendant seeks to dismiss this claim for failure to state a claim. It is true that this claim fails to satisfy the pleading standards. First, Plaintiff fails to specify which Defendants were involved in the allegations. Second, the Complaint lacks all references to when these alleged publications occurred. Third, the Complaint fails to describe with at least some detail the nature of the publications, which is necessary to show that such publication concerned a private fact and would be highly offensive to a reasonable person. However, the Court will dismiss this claim with prejudice based on Pennsylvania's judicial proceedings privilege.

While state law judicial proceedings privilege does not apply to alleged violations under the FDCPA, the privilege does apply to state law claims such as invasion of privacy. "All communications pertinent to any stage of a judicial proceeding are accorded an absolute privilege which cannot be destroyed by abuse." *Binder v. Triangle Publ'ns, Inc.*, 275 A.2d 53, 56 (Pa. 1971). To the extent Plaintiff bases his claims on filings and affidavits made in the course of the Foreclosure Action, those claims are barred by the litigation privilege. *Id.* (concluding statements by parties, witnesses, or attorneys made in open court or in pleadings cannot give rise to defamation or invasion of privacy claims). To the extent Plaintiff bases his claims on the way in which service of process was executed or the fact that service was executed by publication in the Foreclosure Action, those claims are also barred by the litigation privilege. *Id.* ("All communications pertinent to any stage of a judicial proceeding are accorded an absolute privilege which cannot be destroyed by abuse."). Finally, to the extent Plaintiff claims a physical invasion onto his property, those allegations must be brought under a trespass claim.

Therefore, Count 5 is dismissed with prejudice.

### 7.    **Count 6: Libel and Slander**

Plaintiff alleges that various Defendants made written and oral statements "on or around" August 2015 that give rise to claims for libel and slander. In Pennsylvania, an action for libel or slander is subject to a one-year statute of limitations. 42 Pa. C.S. § 5523. Therefore, all claims of libel or slander having occurred prior to May 26, 2016, including the claims pled in Count 6, they are all time-barred. Therefore, Count 6 is dismissed with prejudice.

### 8.    **Count 7: Trespass**

Count 7 first appears in the Notice to Amend, ECF No. 16. Plaintiff alleges all named Defendants committed trespass on Plaintiff's property beginning "about three years ago" and continuing to the present time. Notice to Amend, ¶ 5. Defendants move to dismiss based on Plaintiff's failure to conform with Rule 8 and the two-year statute of limitations under 42 Pa. C.S. §5524(4).

The Notice to Amend contains few facts but an overabundance of legal jargon. For example, Plaintiff pleads that "[t]his is a common law land the common law is the supreme law in America, It is [sic] requires that a man woman or group of people swear by oath, affirmation, affidavit that they have been harm or have some sort of lost physically financial or mental caused by me that is actual or imminent." Notice to Amend, ¶ 6. It is unclear how the repeated references to the lack of oaths and affidavits, which Plaintiff alleges amounts to "harassment and domestic terrorism," relates to his claim for trespass on his property. There is no specific mention of the nature of the trespass, exactly when such incidents occurred, and which

Defendant trespassed at each occurrence.[24] Without more, this claim fails to satisfy the pleading requirements or Rule 8. Therefore, Count 7 for Trespass is dismissed without prejudice.

## IV.    Conclusion

Defendants' Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) is denied without prejudice. Defendants' Motion to Dismiss pursuant to Fed. R. Civ. P 12(b)(6) is granted and part and denied in part as set forth above. An appropriate Order will issue.

Mark R. Hornak
United States District Judge

Cc: All counsel of record
    Vance Strader (by U.S. Mail)

Date: February 7, 2018

---

[24] Paragraph 11 references a breaking and entering. It is unclear if this is related to the May 30, 2016, incident in which Nationstar allegedly entered the House. Without more information, Paragraph 11 does not have sufficient factual allegations to state a claim. Unlike the FDCPA claim against Nationstar that survives, this claim lacks dates and a specified Defendant.